Maxwell Shapiro, J.
On May 22,1956 Pace Motors, Inc., conditionally sold a 1956 Oldsmobile to Joseph Lichtman. Two days later Pace assigned the conditional sales contract to General Motors Acceptance Corporation (GMAC), which, on May 29, 1956, filed the contract in Bergen County, New Jersey, the county in which Joseph Lichtman resided.
On August 23, 1957 Lichtman defaulted on his conditional sales contract, owing GMAC $970.92 at that time. GMAC later *169 discovered that Lichtman had moved to Brooklyn, New York, and on February 19, 1958 filed the conditional, sales contract in Kings County, New York.
Subsequent to the filing of the contract in Kings County by QMAC, the Oldsmobile came into possession of Sal Rosario Quercia, doing business as C & C Service Stations, for repairs. Quercia repaired the car and kept it in storage, waiting for the car to be picked up and the bill paid.
When the bills for repairs and storage were not paid, Quercia had the Oldsmobile sold by Jack Kasper, an auctioneer. Because the automobile had New Jersey plates, Kasper contacted the Motor Vehicle Bureau of New Jersey and inquired as to the ownership of the automobile. He was informed that the Oldsmobile was registered in Lichtman’s name, and he thereupon attempted to give Lichtman notice of the sale. No notice was given to QMAC, nor is there any evidence to indicate that Quercia or Kasper knew of QMAC’s interest in the automobile.
The Oldsmobile was sold by Kasper at public auction on June 3, 1958 to Thomas F. Cowart, doing business as C & C Service Station, Cowart having in the meantime purchased the service station from Quercia. Cowart, after making improvements on the car, sold it to Car Val Motors Co., Inc., which, on September 2, 1958, resold it to Blas de la Uz.
On January 28, 1959 QMAC finally located the Oldsmobile, repossessed it, and had it sold at public auction for $900.
Blas de la Uz instituted an action against Car Val Motors for breach of implied warranty of title and in the same action against QMAC for conversion. Car Val cross-claimed against QMAC for conversion and instituted a third-party action against Cowart for implied breach of warranty of title. QMAC counterclaimed against Car Val for conversion.
In additional separate actions which were consolidated for joint trial only, QMAC sued Joseph Lichtman, the conditional vendee; and Philip Qraber, whose role in the scheme of these numerous transactions will be discussed later, sued Quercia.
It is clear that the plaintiff, Blas de la Uz, was wronged by either QMAC or Car Val Motors. If Car Val could not pass title to the Oldsmobile to Blas de la Uz, and QMAC could repossess the automobile, there was a breach of the implied warranties of title provided in section 94 of the Personal Property Law. If, on the other hand, Car Val could pass title to de la Uz, free of all encumbrances, QMAC converted the Oldsmobile when it repossessed it. Which party had title to the Oldsmobile can be determined by tracing the transactions chronologically.
*170 Upon the assignment of the conditional sales contract by Pace Motors to GMAO, title to the Oldsmobile vested in GMAO, Lichtman, the conditional vendee, having only a right of possession therein. (Personal Property Law, § 61.) Subsequently, when the automobile was brought to Guercia for repairs, and the bill for repairs was not paid, Guercia asserted a lien pursuant to section 184 of the Lien Law, and had the automobile sold by the auctioneer, Kasper.
The first issue of law to be determined is the priority of Guercia’s Hen under section 184 of the Lien Law over GMAO. Section 184 reads in part :“A person keeping a garage * * * or place for the storage, maintenance, keeping or repair of motor vehicles * * * and who in connection therewith stores, maintains, keeps or repairs any motor vehicle * * * at the request or with the consent of the owner, whether such owner be a conditional vendee or a mortgagor remaining in possession or otherwise, has a Hen upon such motor vehicle * * * for the sum due for such storing, maintaining, keeping or repairing of such motor vehicle ”.
GMAO contended that the work done by Guercia was not done at the request or with the consent of the owner or the conditional vendee, Joseph Lichtman. In its trial memorandum, GMAO stated that Lichtman had sold the Oldsmobile to Philip Graber after having defaulted on the conditional sales contract and that "Guercia had knowledge of the sale to Graber. This contention, GMAC asserted, was based on testimony adduced from both Lichtman and Graber during examinations before trial. The attorney for the plaintiff Blas de la Uz stated in his opening remarks that Guercia had done work on the vehicle for Graber. By these assertions GMAC and Blas de la Uz attempted to bring this case within the doctrine set forth by the Appellate Division, First Department, in Manufacturers Trust Co. v. Stehle (1 A D 2d 471).
In the Stehle case, a chattel mortgagor of an automobile, who was in default, sold the vehicle to a person who brought the car to defendants for repairs. The court held that the chattel mortgagee’s rights in the vehicle were superior to the garage-man’s Hen since the garageman had not worked on the automobile ‘ ‘ at the request or with the consent of the owner, whether such owner be a conditional vendee or a mortgagor remaining in possession ”. However, in the Stehle case the mortgage vested title absolutely in the mortgagee upon the mortgagor’s default, whereas the conditional sales contract in this case has no similar provision, Whether or not the difference in the provisions of *171 the chattel mortgage and the conditional sales contract warrants distinguishing this case from the Stehle case, the court does not now have to decide. There was no competent evidence upon which this court could find that Lichtman had in fact sold the Oldsmobile to Graber, and that Graber brought the vehicle to Guereia for repairs.
Upon the trial, the auctioneer, Kasper, testified that he wrote to the Motor Vehicle Bureau of New Jersey before the foreclosure sale and was informed that Lichtman was the owner of the Oldsmobile. That the vehicle was registered in Lichtman’s name in New Jersey is not sufficient evidence for this court to find that Lichtman had brought the vehicle to Guereia for repairs. There was, in fact, no evidence demonstrating that Lichtman was the individual who brought the car to Guereia. Thus, the rule that a garageman’s lien is superior to the rights of a conditional vendor if the repairs are made at the request of or with the consent of the conditional vendee cannot be applied. (See Dealer Plan Corp. v. Automotive Wholesalers, 9 Misc 2d 1052.)
In the absence of any proof as to the identity of the person requesting the repairs from Guereia, or any evidence that the conditional vendor or conditional vendee consented to the repairs, this court cannot find that Guereia had a lien under section 184 of the Lien Law which was superior to GMAC’s interest. Were this action between GMAC and Guereia, the burden of proof would have been on Guereia to establish compliance with the previously quoted portion of section 184 (Bateman v. Clark, 263 App. Div. 789). This court, therefore, holds that all parties attempting to show valid title to the Oldsmobile through the foreclosure of Guereia’s lien have failed to prove their case. There is no basis for finding that GMAC’s rights were cut off by the foreclosure. Since section 184 is in derogation of the common law, its provisions must be strictly construed (Rapp v. Mabbett Motor Car Co., 201 App. Div. 283). This court cannot presume or assume the request or consent of the conditional vendee to the repairs. GMAC has proven the existence of a valid conditional sales contract which was duly filed. The burden of proof is always placed upon the parties attempting to show that the conditional vendor’s rights are cut off (Craine Silo Co. v. Alden State Bank, 218 App. Div. 263).
The court, therefore, finds that GMAC was within its rights, under the circumstances here, to repossess the automobile; that Car Val breached its warranty of title in its sale of the automobile to de la Uz; that Cowart breached its warranty of title in its sale of the automobile to Car Val, and that Car Val was *172 guilty of converting the automobile from GMAC but that GMAC suffered no damages thereby.
Accordingly, in the case of de la Uz against Car Yal and GMAC, judgment is rendered in favor of the plaintiff de la Uz against Car Yal in the sum of $750 and judgment is rendered in favor of the defendant GMAC dismissing the complaint.' In the third-party action, judgment is rendered in favor of the third-party plaintiff, Car Yal, against Cowart in the sum of $750, and judgment is rendered in favor of the defendant GMAC dismissing the complaint. In the case of GMAC against Lichtman, judgment is rendered in favor of the plaintiff against the defendant Lichtman in the sum of $70.' In the ease of Graber against Guereia, the court dismissed the complaint in the course of the trial.